|, MURRAY, Judge.
The New Orleans Police Department (NOPD) appeals a ruling of the Civil Service Commission reversing Police Officer Eugene Smothers’s three-day suspension. We affirm.
According to the NOPD, the appointing authority in this case, Officer Smothers was disciplined because he failed to appear as a witness in municipal court in response to a subpoena. Officer Smothers, a five year veteran of the police force, claims to have arrived at court on the day he was subpoenaed but was told by a court clerk that he could leave once it was determined that the defendant in the case in which Officer Smothers was supposed to be a witness was not present.
The facts in this case are not in dispute. Officer Smothers arrested Alfred Doucette for public drunkenness and drug incapacitation. He was subpoenaed as a witness for the prosecution of Doucette in municipal court on June 2, 1999. Officer Smothers claims to have appeared in court that morning shortly after 8:00 a.m. and that the court clerk released him from the subpoena because the defendant was not present when the case was called. Assistant City Attorney Barrie Byrnes [2was to prosecute the case against Doucette. She called the case at approximately 9:30 a.m. that morning. The defendant was present, but Officer Smothers was not present. Byrnes entered a “nolle prosequi” on the charges against Doucette.
An administrative investigative report submitted by the appointing authority alleged that Officer Smothers violated Departmental Rules and/or Procedures, specifically, Instructions From Authoritative Source. In a letter to Officer Smothers, Superintendent of Police Richard Pennington stated:
Captain Edwin Compass has recommended that the violation of Instruction From Authoritative Source be given a disposition of not sustained. Bureau Chief Ronald Serpas has reviewed the case and the disposition and feels the charge should be sustained. Since this is your second sustained violation for Instructions From Authoritative Souree[,] Bureau Chief Serpas feels you should be given a penalty of a three (3) day suspension.
After a thorough and complete review of the entire investigative report, I find that your conduct, as outlined above, constitutes a violation of Instructions From Authoritative Source.
This Rule reads as follows:
RULE J PERFORMANCE OF DUTY
2. INSTRUCTIONS FROM AUTHORITATIVE SOURCE
A member shall professionally, promptly, and fully abide by or execute instructions issued from any authoritative source. If the instructions are reasonably believed to be in conflict with the Rules and Procedures of *1112 the Department or other issued instructions, this fact shall respectfully be made known to the issuing authority ....

Applicable Chapter

Chapter 74.3 MANDATORY COURT
ATTENDANCE
INSTRUCTIONS
|31. Attendance at any City, State, Federal, or Civil Court and any Administrative Hearing shall be mandatory under the following conditions:
A. under subpoena or order of In-stanta, ...
* * =s
Furthermore, the Superintendent wrote that Officer Smothers’s conduct was contrary to Rule IX, Section 1 of the Rules of the Civil Service Commission, which provides:
1.1 When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the service, or has omitted to perform any act it was his/ her duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. The action may include one or more of the following:
(1) removal from service.
(2) involuntary retirement.
(3) reduction in pay within the salary range for the employee’s classification
[[Image here]]
(4) demotion to any position of a lower classification ....
(5) suspension without pay not exceeding one hundred twenty (120) calendar days.
(6) Fine.
Approving the penalty recommended by Bureau Chief Serpas, and “in light of the above investigation, a review of any disciplinary record and due to the serious nature of your violation,” Superintendent Pennington suspended Officer Smothers for three days. Officer Smothers appealed his suspension to the | ¿Commission. Following a hearing on February 8, 2000, the Commission reversed the three-day suspension. This appeal followed.
An employee who has gained permanent status in the classified city civil service cannot be subjected to disciplinary action except for cause expressed in writing, and he may appeal disciplinary action taken against him to the Civil Service Commission. La. Const, art. X, § 8(A). On appeal, the Civil Service Commission has a duty to decide if the appointing authority had good or lawful cause for taking the disciplinary action, and, if so, whether the punishment is commensurate with the offense. Walters v. Department of Police of City of New Orleans, 454 So.2d 106 (La.1984). The appointing authority has the burden of proving by a preponderance of the evidence not only that the complained-of conduct occurred but that it impaired the efficient operation of the governmental entity. Macelli v. Department of Police, 98-0253 (La.App. 4 Cir. 9/9/98), 718 So.2d 1021, 1023. The Commission’s decision is subject to review by the court of appeal on questions of law or fact. Walters, 454 So.2d at 113; Barquet v. Department of Welfare, 620 So.2d 501, 505 (La.App. 4th Cir.1993).
Therefore, to modify the disciplinary action of the appointing authority, the Commission must find that there was insufficient legal cause for the disciplinary action taken. Legal cause exists if the facts found by the Commission disclose that the conduct of the employee impaired *1113 the efficiency of the public service. Palmer v. Department of Police, 97-1593 (La.App. 4 Cir. 1/28/98), 706 So.2d 658, 659. A reviewing court should not reverse a Commission’s conclusion on whether the disciplinary action is based on legal cause, unless the conclusion is arbitrary, capricious, or an abuse of discretion. Walters, 454 So.2d at 114. When reviewing | ¡¡the Commission’s findings of fact, however, a reviewing court should not reverse or modify a finding unless it is manifestly erroneous. Id. at 113.
Officer Smothers testified at the hearing before the Commission that he appeared in court on the day set for the Doucette matter but was told he could leave by court personnel. Officer Smothers acknowledged that paragraph 2 of Chapter 74.3 of the police manual states that only a judge can release an officer from a subpoena. This provision states:
Absence from any city, state or federal or civil court shall not be authorized by employees of the department. Such absence may only be authorized by the judge of the requesting court.
Assistant City Attorney Barrie Byrnes testified that on June 2, 1999, when she called the Doucette case at 9:32 a.m., Dou-cette was present but Officer Smothers and another officer witness were not present. Byrnes testified that domiciliary service had been accomplished on the officers, and that she “dropped [the case] at that time.”
Byrnes testified that it was possible that Officer Smothers was in court before 9:32 a.m.; she explained that municipal court starts at 8:00 a.m., whereas criminal court starts at 9:00 a.m. and that around 9:00 a.m., the police officers leave to go to criminal court. She stated that often defendants come in after the police have left.
Asked whether a city attorney has the authority to release someone from a subpoena, Byrnes answered, “The truth is, only an assistant city attorney has the authority ... because they’re our witnesses.” Byrnes further explained that the rules of criminal procedure allow only the assistant city attorney to release their witnesses. Asked to explain how things work in municipal court, Byrnes responded:
[fiOn a small day, we have 75 cases, about. On a big day, we have about 300. That’s per section, four sections a day. It would be physically impossible for me to speak to every witness in every case. It would completely grind to a halt. So all personnel get involved in all facets. I have heard clerks tell people, You can go. We’ll call you. I’ve heard the judge tell people, You can go. We’ll call you. I personally try to always get the clerks ■to give me cases when they tell people so I can mark it, but they don’t always do it.
Byrnes testified that the same “grinding to a halt” effect would occur if the judge spoke with each witness.
Sergeant Stephen Dunn testified that he investigated the incident. Dunn stated that Officer Smothers said that he appeared at municipal court on June 2, 1999, that the defendant’s name was called and there was no response, and that the clerk told him that the defendant would be “put out wanted” and advised Officer Smothers that he could leave. Dunn stated that in investigating the incident, he spoke to Byrnes and Duke Nelson, the clerk of municipal court, but could find no one to back up Officer Smothers’s position. Dunn acknowledged that there may have been a lot of people in court whom Officer Smothers could have mistaken for a clerk.
Dunn stated that he determined that Officer Smothers violated department rules relating to mandatory court attend- *1114 anee, specifically Chapter 73.4, paragraphs 1 and 2. Dunn acknowledged that the letter sent to Officer Smothers by the NOPD regarding the incident only referenced paragraph 1.
Dunn also admitted a discrepancy in the NOPD’s evidence; the only subpoena Officer Smothers received had a defendant other than Doucette listed on it. Dunn acknowledged that the subpoena may have made Officer Smothers aware of only one defendant in whose case he was to testify.
[7Captain Edwin Compass testified that he held a hearing on this incident and reviewed Dunn’s report. Compass testified:
... I looked at the totality of circumstances and I looked at the amount of court that Officer Smothers has been subpoenaed to, because he’s an active police officer. He has a lot of court that he goes to because he makes a lot of arrests. And it wasn’t a chronic problem. And he said that the clerk gave him permission to leave, even though the clerk said he didn’t remember giving Smothers permission to leave. But he didn’t remember if he didn’t say. He just didn’t recall the incident. So I used my discretion and I gave him the benefit of the doubt.
... I looked at Officer Smothers’ record and I looked at [his] other court appearances, and I made the recommendation that it be not sustained, that he be exonerated.... His supervisor informed me that Officer Smothers is very diligent in going to court. He takes a lot of pride in going to court and [the supervisor] doesn’t have a problem with Officer Smothers going to court.... [W]hen he was wrong in other cases, he admitted that he was wrong and took his penalty. So it [w]ould be inconsistent, in my opinion, that he would lie and say that he was dismissed from court when he wasn’t dismissed from court.
Compass testified that Officer Smothers did violate Rule 74, paragraphs 1 and 2. He also stated that the municipal court clerk asked about the matter was familiar with Officer Smothers and reported that Officer Smothers usually honored his subpoenas. Compass confirmed that Officer Smothers had previously received a letter of reprimand regarding a court subpoena.
Ultimately, the NOPD rejected Compass’s recommendation, sustained the violation, and suspended Officer Smothers. Following Officer Smothers’s appeal to the Commission and the hearing, the Commission ruled:
The Appointing Authority contends that it does not matter that [Smothers] appeared in Court and was dismissed by a court clerk. Instead it argues that [Smothers] should have waited for a judge to release him from the subpoena because the internal regulation that it contends [Smothers] violated states that only a judge can release a witness from a subpoena. However, the Appointing Authority’s argument ignores the reality of how the Municipal Court operates. As confirmed by Assistant City Attorney [Byrnes], the judge does not perform this function. He delegates the function to his personnel. As such, it is clear that the City did not prosecute Mr. Dou-cette because |sof poor communication between court personnel and the Assistant City Attorney prosecuting the case. The court clerk released [Smothers] without informing the Assistant City Attorney. [Smothers] is not responsible for flaws of the court.
Accordingly, the Appointing Authority has failed to establish that it disciplined [Smothers] for cause, and the appeal is GRANTED.
*1115 On appeal, the NOPD contends that the Commission acted arbitrarily and capriciously by overturning the three-day suspension it imposed on Officer Smothers. In doing so, the NOPD claims, the Commission exceeded the bounds of its constitutional authority by substituting its judgment for that of the NOPD. The NOPD further claims that the Commission determined that there was a factual basis for discipline, yet found no discipline was warranted.
In this case, unlike other cases in which the appellate court reversed the Commission’s action, the Commission specifically concluded that the NOPD did not meet its burden of proving sufficient legal cause for the action taken against Officer Smothers. Cf. Chapman v. Department of Police, 97-1384 (La.App. 4 Cir. 1/28/98), 706 So.2d 656, writ denied, 98-0828 (La.5/8/98), 719 So.2d 55.
The record shows that the Commission did not find that the facts supported disciplinary action against Officer Smothers. Testimony at the hearing before the Commission may have indicated that Officer Smothers technically violated an internal police rule, but the record also revealed that the internal police rule allowing only judges to release police officers from subpoenas, in fact, is not enforced as °a practical matter. Indeed, the record indicates that the rule cannot be enforced within the parameters of the workings of municipal court. The record also is unclear as to why the NOPD did not reference the internal rule when it notified Officer Smothers of the disciplinary action being taken against him.
|9We find that the record supports the Commission’s view of the facts and its decision. The Commission was within its authority to reverse the NOPD’s disciplinary action because the Commission determined that Smothers was not disciplined for cause.
The Commission’s action was not arbitrary, capricious, or an abuse of discretion. The Commission did what it was supposed to do — it prevented the NOPD from acting arbitrarily. The Commission’s decision was not an attempt to substitute its judgment for that of the NOPD, nor was it an attempt to interfere in the operations or management of the NOPD.
For the foregoing reasons, the decision of the Commission is affirmed.
AFFIRMED.