MAX N. TOBIAS, Jr., Judge.
 

 |, Police Officer David Ellis, the plaintiff/appellant, has filed the instant appeal seeking reversal of the decision of the Civil Service Commission of the City of New Orleans (“CSC”) that terminated his employment with the New Orleans Police Department (“NOPD”). After examining the record and applicable law, we affirm that decision.
 

 Officer Ellis was assigned to the First District of the NOPD. On 15 July 2008 at approximately 3:00 p.m., Officer Ellis responded to a call for service at the 900 North Villere Street, the location of the Treme Center, relating to an off-duty NOPD Officer. The officer, later identified as Ashley Terry, was reportedly in an altercation during which she displayed her weapon. As a result of the incident, an investigation was performed and found the following:
 

 This investigation determined that on or about Tuesday, July 15, 2008, at or about 3:00 p.m., you (Officer David Ellis) while on duty in the First Division responded to a call for service at 900 North Villere Street, (Treme Center) related to off duty New Orleans Police Officer (Ashley Terry) involvement in a disturbance in which she displayed her weapon in the presence of children and citizens. The investigation proved that you failed to take the appropriate and | ^necessary police action even after Offi
 
 *1150
 
 cer Terry informed you that she was involved in the disturbance. In your administrative statement you claimed that when you arrived at the Treme Center no one identified themselves to you as a police officer. You also stated that you never informed your supervisors, Sergeants Neal Charles and Gary Lewis that you interviewed or spoke with a police officer while you were at the Treme Center. However, during Sergeants Charles’ and Lewis’ administrative statements they both stated that you informed them that you had spoken with a police officer who admitted she had a verbal altercation with a female at the Treme Center. Additionally, in Officer Terry’s administrative statement she also verified that she did in fact speak with you at the Treme Center and further identified herself as a police officer. The investigation and the statements from Sergeant Charles, Sergeant Lewis and Officer Terry proved that you were not truthful in your administrative statement to Sergeant Jones when you stated you never spoke with a police officer at the Treme Center. You acted in a discourteous manner by using profanity at the scene of the disturbance when witnesses heard you state to Officer Terry, “You should have wasted the motherfucker.” As a member of the New Orleans Police Department such conduct is a violation of Departmental rules and regulations which required that you were suspended pending an Administrative Investigation.
 

 As a result of the investigation, Officer Ellis was found to have violated Rule 2: Moral Conduct, Paragraph 2-Courtesy and Paragraph 3-Truthfulness; and Rule 4: Performance of Duty, Paragraph 4-Ne-glect of Duty. For the violation of Rule 2: Moral conduct, Truthfulness, Officer Ellis was terminated from the police department. He timely appealed to the CSC, which assigned the matter to a hearing examiner.
 

 A hearing was held on 2 April 2009 and 7 May 2009. The NOPD provided two independent witnesses, Ms. Dorthea Augustus and Mr. Beldon Batiste, who were present during the entire incident in question. They both testified that a woman in plain clothes, later identified as Officer Terry, displayed a weapon at the Treme Center during an argument while picking up her child. Ms. Augustus heard |;ithe woman identify herself as a police officer assigned to the Seventh District. The witnesses agreed that Officer Terry was the aggressor in the incident.
 

 Mr. Batiste called the First District and Officer Ellis responded to the call; he was alone. Both Ms. Augustus and Mr. Batiste saw Officers Ellis and Terry have a conversation during which Officer Terry displayed her credentials and identified herself as a NOPD Officer; he did not speak to anyone else at the scene. Both witnesses also testified that they overheard Officer Ellis make a profane statement to Officer Terry at the end of their conversation.
 

 Sergeants Gary Lewis and Neal Charles were employed as supervisors in the First District. On the day in question, they were on duty riding together in the general vicinity of the Treme Center. They testified that they received a call from the Command Center concerning an alleged aggravated assault at 1400 North Villere Street involving a police officer. They passed the Treme Center and noticed that it appeared empty. No complainant was found at the address to which they were sent. They soon received a radio call from Officer Ellis, who met them at 1400 North Villere Street.
 

 According to Sergeants Lewis and Charles, Officer Ellis told them that he had already investigated the complaint at
 
 *1151
 
 the Treme Center and learned that an off-duty NOPD officer was involved. Officer Ellis stated that the officer had been threatened by a man and a woman and that she had displayed her gun, but did not point it at anyone. Officer Ellis concluded that the off-duty officer had been the victim in the incident, neither called a supervisor nor completed a police report, and permitted the woman to leave. Officer Ellis stated that he did not take the officer’s name or the district to which she was assigned.
 

 |4Sergeants Lewis and Charles both testified that Officer Ellis should have called a supervisor from the scene because a police officer was involved. He should have also prepared a police report after conducting an investigation that included interviewing witnesses at the scene.
 

 Officer Ellis stated in his administrative report and at the hearing that he responded to the call at the Treme Center, but did not interview any witnesses because no one would come forward. He testified that he did not speak to a woman who identified herself as a police officer, but that Officer Terry had presented herself as an independent witness who was not involved in the incident. Officer Ellis stated that he first learned the identity of that woman when he saw her picture on the evening news.
 

 Upon his arrival at the Treme Center, Officer Ellis stated that the center was empty except for two women located at the rear of the center who he interviewed regarding the incident. He denied making the statement attributed to him by Ms. Augustus and Mr. Batiste. He also denied telling his supervisors that the occurrence involved a police officer who he thought worked at the Seventh District.
 

 The hearing officer issued a report wherein he found that the NOPD had established by a preponderance of the evidence that it terminated Officer Ellis’ employment for cause. The report stated that it appeared that Officer Ellis gave undue deference to a fellow police officer that portrayed the NOPD in a very negative light as biased and non-responsive to citizen complaints against police officers. The hearing officer found Ms. Augustus and Mr. Batiste credible who confirmed that Officer Ellis was untruthful during the internal investigation, was discourteous, and neglected his duty to conduct a proper investigation and involve | sa supervisor. His supervisors also confirmed Officer Ellis’ untruthfulness during the entire process. The hearing officer recommended that the appeal be denied.
 

 The CSC reviewed a copy of the transcript and all documentary evidence. It agreed with the hearing officer’s conclusions and denied the appeal.
 

 Officer Terry appeals the judgment of the CSC. He argues that the CSC erred by finding that the NOPD proved by a preponderance of the evidence that he violated any of the NOPD’s internal rules. In addition, he claims that the CSC erred when it imposed the punishment of termination considering the rules for which he was found to have violated.
 

 The standard of review in civil service disciplinary matters has been articulated by the courts on numerous occasions. It is well settled that an employee who has gained permanent status in the classified city civil service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. The employee may appeal from such disciplinary action to the CSC. The burden of proof on appeal, as to the facts, shall be on the appointing authority. La. Const. art. X, § 8 (1974);
 
 Walters v. Dept. of Police of New Orleans,
 
 454 So.2d 106, 112-13 (La.1984). The CSC’s decision is subject to review on any question of law or fact upon
 
 *1152
 
 appeal to the appropriate court of appeal. La. Const, art. X § 12(B).
 

 The CSC has a duty to independently decide, from the facts presented, whether the appointing authority had good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed was commensurate with the dereliction.
 
 Walters,
 
 454 So.2d at 113. Legal cause for disciplinary action exists whenever an employee’s conduct impairs the efficiency of the public service in which that employee is engaged.
 
 Cittadino v. Dept. of Police,
 
 558 So.2d 1311 (La.App. 4 Cir.1990). The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity occurred, and that such activity bore a real and substantial relationship to the efficient operation of the public service.
 
 Id.
 
 at 1315.
 

 In reviewing the CSC’s exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, this court should not modify the CSC’s order unless it is arbitrary, capricious, or characterized by an abuse of discretion.
 
 Walters,
 
 454 So.2d at 114. “Arbitrary or capricious” means that there is no rational basis for the action taken by the CSC.
 
 Bannister v. Dept. of Streets,
 
 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
 

 The CSC has the authority to “hear and decide” disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. art. X, § 12;
 
 Fihlman v. New Orleans Police Dept.,
 
 00-2360 (La.App. 4 Cir. 10/31/01), 797 So.2d 783. The legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. The protection of civil service employees is only against firing (or other discipline) without cause[.]
 
 Id.
 
 at p. 5, 797 So.2d at 787;
 
 Deshotel v. Dept. of Police,
 
 07-0363, p. 3-4 (La.App. 4 Cir. 10/24/07), 970 So.2d 1106, 1108-09.
 

 We have reviewed the record and read the testimony taken during Officer Ellis’ hearing. We do not find that the CSC was arbitrary and/or capricious by denying Officer Ellis’ appeal. Ample evidence exists in the record to prove, by a preponderance of the evidence, that the complained of activity occurred, and that such activity bore a real and substantial relationship to the efficient operation of the |7public service. We agree with the findings of the hearing officer, which were adopted by the CSC. We also find that the punishment of termination is commensurate with violating the NOPD’s internal rules regarding truthfulness.
 

 Based on the forgoing, the decision by the CSC is affirmed.
 

 AFFIRMED.